# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:25-CV-00865-KDB-DCK

| | |
|---|---|
| EMMA FENDEL, | |
| **Plaintiff,** | |
| **v.** | <u>**MEMORANDUM AND ORDER**</u> |
| SHREEJI HOTEL GROUP, LLC AND HOTEL EQUITIES, LLC, | |
| **Defendants.** | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. No. 13). The Court has carefully considered this motion, the relevant pleadings and the parties' briefs and exhibits. Because Plaintiff has alleged sufficient allegations to state plausible claims against Defendant Shreeji Hotel Group, LLC ("SHG"), but not against Defendant Hotel Equities, LLC ("HE"), the Court will dismiss Plaintiff's claims against HE, but allow the case to go forward against SHG.

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court,

1

however, accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Further, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II.     FACTS AND PROCEDURAL HISTORY

SHG owns nine hotels, including the Courtyard by Marriott in Charlotte, North Carolina (the "Hotel"). *See* Doc. No. 6-2 at 1.  In March 2021, Plaintiff Emma Fendel, who identifies herself as LGBTQ+, was hired to work as the Hotel's Assistant General Manager by HE, the management company employed by SHG to hire and manage employees. Doc. No. 6 at ¶¶ 18, 20. In February

2

2023, Fendel notified HE that she would require three separate leaves of absence for "medically necessary, gender-affirming care [for gender dysphoria] done in multiple stages." *Id*. at ¶¶ 21-22. HE approved each leave of absence as it was requested, and Fendel took and returned from the first and second leaves in June 2023 and August - September 2023. *Id*. at ¶¶ 23-24, 27-28, 32.

Fendel's third approved leave request was submitted on February 15, 2024 for leave to begin on March 3, 2024, with a return to work date in the middle of April 2024. *Id*. at ¶¶ 33-34, 37. On or about March 1, 2024, SHG informed Fendel that it was assuming control of management of the Hotel. *Id*. at ¶ 40. At the same time, Fendel's Regional Manager, Lauren Cato, informed Fendel that Fendel's position was being eliminated effective March 31, 2024. *Id*. at ¶ 41. Fendel alleges that the decision to terminate Fendel's employment was made by SHG, who told Fendel that that they were eliminating all Assistant General Manager positions across their portfolio – a termination decision that SHG would later claim [to the EEOC] was a "legitimate business decision." *Id*. at ¶¶ 42-44. However, Fendel further alleges that SHG's explanation for the termination of employment was untrue. Instead of eliminating all Assistant General Managers, SHG allegedly retained other Assistant General Managers at other hotel properties in their portfolio. *Id*. at ¶¶ 44-46. Consistent with a termination letter that Fendel received from HE on March 23, 2024 (dated March 4, 2024), Fendel's last day of employment was March 31, 2024, the last day HE was retained to manage the hotel. *See* Doc. No. 6-2 at 2.

After Fendel's employment at the Hotel ended, Fendel submitted separate Charges of Discrimination – with the same statement of claims – against SHG and HE to the EEOC on July 3, 2024. Doc. Nos. 6-2, 14-1. On July 31, 2025, Fendel received a separate "Right to Sue" letter from the EEOC on both Charges. Doc. Nos. 6-3, 6-4. The Complaint in this action, initially filed only against SHG, was timely filed within ninety days of the Right to Sue letter on October 29,

3

2025. Doc. No. 1. On November 18, 2025, outside of the 90-day period, Fendel filed an Amended

Complaint adding HE as a defendant. Doc. No. 6. The Amended Complaint asserts claims for

gender and disability discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII") and the Americans with Disabilities Act of 1990 ("ADA"), as well as interference with

Fendel's rights under the Family Medical Leave Act ("FMLA") against both SHG and HE.

Following a Waiver of Service, Defendants timely filed their Motion to Dismiss all claims. Doc.

No. 13. The motion has been fully briefed, and is ripe for the Court's decision.

### III. DISCUSSION

#### A. Claims Against SHG

SHG's primary argument[1] in support of its motion for dismissal is that it was never

Fendel's "employer" under Title VII, the ADA or the FMLA. However, in determining whether

SHG is liable under these statutes as an employer, the Court must look at more than who signed

Fendel's paycheck. While most employment discrimination cases involve single employers, the

term 'employer' under Title VII and the ADA "should be 'construed in a functional sense to

encompass persons who are not employers in conventional terms, but who nevertheless control

some aspect of the individual's compensation, terms, conditions, or privileges of employment.'"

---

[1] SHG adds a secondary argument with respect to Plaintiff's FMLA claims, asserting that Fendel is not an "eligible employee" who had been employed for at least twelve months and 1250 hours of service during the previous year. *See* Doc. No. 14 at 7. However, whether or not SHG was a "successor" employer (so that Fendel's tenure and hours of service at the Hotel preceding March 2024 must be considered) is a highly fact dependent inquiry, which is best resolved after discovery. *See Osei v. Coastal Int'l Sec., Inc.*, 69 F. Supp. 3d 566, 570 (E.D. Va. 2014) (Federal courts have analyzed the successor in interest issue in FMLA cases using a three-part test that considers the equities of imposing a FMLA legal obligation on an employer. This test requires the reviewing court to consider: "(1) the interests of the plaintiff-employee, (2) the interests of the defendant-employer, and (3) the federal policy goals of the statute.").

4

*See Parker v. Golden Peanut, LLC*, 115 F. Supp. 3d 702, 708–10 (E.D. Va. 2015). This approach "finds support in the broad remedial purpose of Title VII which militates against the adoption of a rigid rule strictly limiting 'employer' status under Title VII to an individual's direct or single employer." *Id.* Further, under the FMLA, employment relationships are defined even more expansively—the statutory definition of an employer includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I); *see Shipton v. Baltimore Gas & Elec. Co.*, 109 F.4th 701, 709–10 (4th Cir. 2024).

With these broad principles in mind, SHG plausibly comes within the ambit of an "employer" with respect to Fendel, especially under the generous standard of review at this early stage of the litigation. SHG is alleged to have been more than simply the absent owner of the Hotel where Fendel worked. Rather, Fendel alleges that SHG's owners regularly visited the Hotel and sought to be kept informed about Fendel's medical situation. See Doc. No. 6-2 at 1 ("The Owners (Vivek Patel and Akshar Patel (Brothers)) often visited the hotel and would ask when I would be out again."). More significantly, Fendel expressly alleges that SHG said on March 1, 2024, that it was "assuming control of management" of the hotel and that SHG made the decision to terminate Fendel's employment. Taking these factual allegations as true and elevating substance over form, SHG controlled Fendel's employment with respect to termination as would any "direct" employer. Indeed, the fair inference from the allegations of the Amended Complaint is that SHG, not HE, was the sole decision-maker regarding the conduct challenged as unlawful in March 2024. Therefore, the Court concludes that Fendel has plausibly stated claims against SHG under Title VII, the ADA and the FMLA as Fendel's "employer" within the meaning of those statutes, and SHG's motion to dismiss will be denied.

**B.      Claims Against HE**

HE has two primary arguments in favor of dismissal. First, it argues that Fendel's claims are untimely because the Amended Complaint was filed more than 90 days after Fendel received a Right to Sue letter from the EEOC. Second, it contends that even if the Amended Complaint is considered timely as to HE, the allegations do not plausibly state a claim of unlawful discrimination. While HE raises a significant question as to the timeliness of Fendel's claims—which can proceed only if they can be related back in time to the Complaint,[2] the Court need not reach or decide that issue because the Complaint fails to state a plausible claim against HE (and in any event the Court prefers to decide cases on the merits).

Most simply put, reading the Amended Complaint raises an obvious question, "What did HE do wrong?"  As discussed above, there is no factual allegation that HE discriminated against Fendel based on gender or failed to make a requested accommodation for any disability under the

---

[2] When proposed claims in an amendment are, as here, barred by the statute of limitations, Federal Rule of Civil Procedure 15(c) provides for the relation back of amendments to the original pleading under certain circumstances. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000). If "the amendment changes the party or the naming of the party against whom a claim is asserted" the amendment relates back to the date of the original complaint if: (1) the amendment arises out of the same "conduct, transaction, or occurrence set forth ... in the original pleading;" (2) the new party received adequate notice of the lawsuit within the 90-day period provided by Rule 4(m) so as to not be "prejudiced in maintaining a defense on the merits;" and (3) the new party knew or should have known that "but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R. Civ. P. 15(c)(1)(C); *see also Goodman v. PraxAir, Inc*., 494 F.3d 458, 470 (4th Cir. 2007); *Morgan v. Ellis*, No. 322CV00003KDBDCK, 2023 WL 3361200, at *2-3 (W.D.N.C. May 10, 2023). Because Plaintiff was clearly aware of the existence of two separate potential defendants (as reflected in the EEOC proceedings and the Complaint itself), there is a substantial question whether the Complaint (which is not a model of clarity in its allegations) reflected a "mistake" related to the identity of the proper party defendant(s).

ADA[3] (in fact, there is no allegation that Fendel requested any accommodation at all). And, with respect to the FMLA, the allegations are that each time Fendel asked, HE granted Fendel's request for leave and allowed Fendel to return to work, until SHG took over management of the hotel. Finally, the Amended Complaint is clear that SHG, not HE, made the decision to terminate Fendel's employment. Therefore, there are insufficient factual allegations to support any claim that HE unlawfully discriminated against Fendel or violated the FMLA, and HE's Motion to Dismiss will be granted.

### IV.  ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant SHG's Motion to Dismiss (Doc. No. 13) is **DENIED;**

2. Defendant HE's Motion to Dismiss (Doc. No. 13) is **GRANTED;** and

3. This case shall proceed towards a decision on the merits on the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: April 15, 2026

Kenneth D. Bell
United States District Judge

---

[3] Fendel alleges that HE required Fendel to "work by herself" at the front desk, which resulted in the lifting of objects in excess of the weight limit in Fendel's medical restrictions post-surgery. *See* Doc. No. 6 at ¶¶ 25-26. However, Fendel fails to allege either that any accommodation was requested and denied or that Fendel suffered any actual harm in lifting any object.

7